```
               IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF OHIO
                          EASTERN DIVISION


Amanda Hawkins, et al.,         :

          Plaintiffs,           :

     v.                         :    Case No. 2:05-CV-688

Anheuser-Busch, Inc.            :    JUDGE FROST

          Defendant.            :
```

OPINION AND ORDER

This employment case is currently before the Court to consider the motion of defendant Anheuser-Busch, Inc. to compel the discovery of certain medical records relating to one of the plaintiffs, Cherri Hill. Opposing and reply memoranda have been filed, and the records in dispute have been submitted to the Court for an *in camera* inspection. For the following reasons, the motion will be granted, but the Court will impose certain conditions on the disclosure and use of the records.

I.

By way of brief background, all of the plaintiffs in this employment case assert that they were the victims of either sexual harassment or retaliation while employed by Anheuser-Busch. All of them claim that as a result of either the harassment or retaliation, they suffered "emotional distress." Complaint, ¶6. Anheuser-Busch, as most defendants would, then requested the production of medical records which would either document the existence of such distress or indicate that any emotional distress suffered by any plaintiff was caused in whole or in part by factors other than harassment in the workplace.

Ms. Hill obtained records from her medical providers but did

not produce all of those records to Anheuser-Busch.  Rather, as noted in her opposing memorandum, she withheld records that "relate to gynecological examinations that are not at all related to Ms. Hill's claims of emotional distress in this case" because they "are not psychological or psychiatric records that might shed light on Ms. Hill's emotional condition."  Also, some of the records predate the alleged harassment and are therefore, in Ms. Hill's view, "not even historically related to the incidents complained about in this case" because those incidents occurred in October or November, 2000.  Thus, she contends that none of the eighteen pages of records submitted to the Court are properly discoverable.

II.

The production of medical records relating to a plaintiff's claim of emotional injury presents issues of both relevance and confidentiality which, while not unique to this setting, do challenge judges and litigants to be appropriately sensitive to the competing interests at stake.  Certainly, the Federal Rules of Civil Procedure which govern discovery, although they have been somewhat circumscribed in recent years to reduce the cost and expense of pretrial discovery, still reflect a liberal policy of permitting pretrial discovery of information that is "relevant to the claim or defense of any party," Fed.R.Civ.P. 26(b)(1), so long as the request for such information is "reasonably calculated to lead to the discovery of relevant evidence." Id. On the other hand, the Court has been given wide discretion to fashion protective orders that will protect a party against "annoyance, embarrassment, oppression, or undue burden and expense," including orders which either restrict the use and dissemination of such information or which prohibit its production altogether.  Fed.R.Civ.P. 26(c).  The question then becomes whether the medical records at issue are truly relevant to the plaintiff's claim of emotional injury or to the defense

2

that such injury stems in whole or in part from other sources, and, if so, whether the nature of the medical conditions revealed in those records is sufficiently sensitive and subject to misuse that the Court ought either to restrict its use or simply deny the defense request for such information.

The most common justification for inquiry into medical records involving conditions other than the one allegedly caused by the defendant's actions is that medical conditions, and particularly those having an emotional component, may result from multiple causes. Court decisions recognize this reality, noting that "medical records may be ... relevant if they shed light on other contributing causes of Plaintiff's emotional distress claims." Walker v. Northwest Airlines, 2002 WL 32539635, *3 (D. Minn. October 28, 2002); see also Moore v. Chertoff, 2006 WL 1442447 (D.D.C. May 22, 2006). On the other hand, such records are peculiarly subject to misuse, especially if widely disseminated, since the Courts have been ready to recognize the significant privacy interests adhering to medical information. Thus, Courts have commonly restricted the disclosure of such records to opposing counsel and experts, preventing even opposing parties from viewing such information unless there is an especially compelling reason for them to do so. See, e.g., Schoffstall v. Henderson, 223 F.3d 818 (8th Cir. 2000); see also Alexander v. Federal Bureau of Investigation, 186 F.R.D. 54 (D.D.C. 1998); Dunn v. Warhol, 1992 WL 102744 (E.D. Pa. May 8, 1992). It is with these principles in mind that the pending request for discovery of medical information will be evaluated.

III.

Turning first to the issue of relevance, it is clear that Ms. Hill's memorandum defines the potential relevance of medical records, in the context of a claim for emotional distress damages, far too narrowly. Certainly, contemporaneous medical records documenting the existence of emotional distress are relevant, and most plaintiffs would wish to disclose such

documents during discovery so that they can be used as affirmative proof of the existence and severity of the claimed condition.  On the other hand, it is reasonable to conclude, even without expert testimony, that a person who experiences emotional distress at any given time of his or her life may have already been experiencing such distress due to other life events.  Thus, medical records - and not only records of prior treatment for a diagnosed psychological or psychiatric condition - may also contain evidence which, while it might not assist the plaintiff in proving the causal relationship between workplace stress and emotional injury, might assist the defendant in showing either the lack of a causal connection, or the presence of multiple causes.  Because a defendant is typically liable in damages only for any exacerbation of a pre-existing condition, be it physical or psychological, it is important for the defendant to learn about and explore the impact of other factors that may have either created such a condition or caused a "baseline" level of emotional distress to be present at the time of the alleged workplace injury.

    Certainly, some conditions, either by their nature or by their temporal relationship to the alleged injury, may be able to be ruled out categorically as simply irrelevant to a claim of emotional distress.  For example, if Ms. Hill had fractured a bone ten years before the alleged harassment, and if the medical records indicated that the fracture had completely resolved in a short period of time, it would be very unlikely that records relating to the fracture would shed any light on a current emotional condition.  On the other hand, if she had suffered a serious physical injury only a year or two before, and it had persisted up to the date of the alleged emotional injury, it would be much more reasonable to infer that her physical injury and the treatment regimen had some ongoing impact on the state of

her emotional health, and to permit at least a limited inquiry into the details of that condition.

Here, without placing into the public record the details of the withheld records, the Court concludes that there may well be (or that a medical or psychological expert might well conclude that there is) a relationship between the medical conditions described in these records and the state of Ms. Hill's emotional condition in October or November of 2000.  In fact, some of the records make explicit reference to an emotional condition. Whether that is a condition caused by harassment in the workplace or by other factors is an issue about which the defendant is entitled to discovery.  Others refer to physical conditions which might be distressing to the average person, and which either existed shortly before or at the time of the alleged harassment, or which occurred afterward but at a time when it would appear that Ms. Hill contends that she was still suffering from the emotional impact of the alleged harassment.  Anheuser-Busch is entitled to examine these records and to have them evaluated, or to question Ms. Hill about them, because they may well lead to the discovery of evidence that would affect the way in which the trier of fact evaluates her claim of emotional distress.

This is not to say, of course, that all of these records will ultimately be admitted at trial or that evidence of the various conditions disclosed in these records will be admissible. The showing needed to obtain records during discovery and the showing needed to connect the evidence in those records to any emotional injury, or to overcome other barriers to admissibility, such as F.R.Evid. 403, are quite different.  However, the Court is persuaded that Anheuser-Busch has met its burden of showing that, for discovery purposes, these records fall within the scope of permissible discovery as defined in Rule 26(b).

IV.

5

Concluding that the records are discoverable does not end the Court's inquiry, however.  The Court is also obligated to consider under what terms these records should be produced.

There does not appear to be a standing protective order in place in this case.  If there were, the Court would simply direct the production of the documents subject to that order, and allow counsel for Ms. Hill to designate what level of protection would be deemed appropriate.  In the absence of such an order, the Court, after considering the contents of the records and the cases cited in Section II above, concludes that the initial production of the records should be for counsel's and experts' eyes only.  However, if, after such production, Anheuser-Busch believes that a lower level of protection is warranted, it may make such a request to Ms. Hill's counsel.  If the parties disagree, Anheuser-Busch may move the Court for a modification of this order.

V.

Based on the foregoing, the motion of Anheuser-Busch to compel (#25) is granted.  The withheld medical records shall be produced within ten days, but shall be disclosed only to counsel for Anheuser-Busch and any expert witnesses retained for the purpose of expressing opinions as to Ms. Hill's emotional distress claim.  If filed in Court, they shall be placed under seal, and if used at a deposition, persons other than counsel and experts shall be excluded from the deposition and any portion of the transcript referring to the records or the conditions described therein shall be treated as the records themselves and are governed by the terms of this order.  If Anheuser-Busch seeks to lower or to remove the level of protection provided in this order, it may file a motion for such relief after conferring in good faith with Ms. Hill's counsel concerning the need to disseminate more broadly either the records at issue or the

information contained therein.

Any party may, within ten (10) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due ten days after objections are filed and replies by the objecting party are due seven days thereafter.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.4.


/s/ Terence P. Kemp
United States Magistrate Judge