UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

AMANDA HAWKINS, et al.,

      Plaintiffs,                               Case No. 2:05-cv-688
                                                    JUDGE GREGORY L. FROST
    v.                                            Magistrate Judge Terence P. Kemp

ANHEUSER-BUSCH, INC.,

      Defendant.

**OPINION AND ORDER**

This matter is before the Court for consideration of Defendant's motion for summary judgment on the claims of Plaintiff Amanda Grace-Hawkins (Doc. # 40), Defendant's motion for summary judgment on the claims of Plaintiff Kathryn Jackson (Doc. # 41), Defendant's motion for summary judgment on the claims of Plaintiff Cherri Hill (Doc. # 42), and Defendant's motion for summary judgment on the claims of Plaintiff Jackie Cunningham (Doc. # 43). Plaintiffs have filed a joint memorandum in opposition (Doc. # 47), and Defendant has filed a reply memorandum for each Plaintiff (Docs. # 53, 54, 55, 56). For the reasons that follow, the Court finds the motions for summary judgment well taken.

**I. Background**

Defendant, Anheuser-Busch, Inc., is a Missouri-based brewing company that operates a Columbus, Ohio brewery. Plaintiffs Amanda Grace-Hawkins, Kathryn Jackson, Cherri Hill, and Jackie Cunningham are all brewery employees. Most of the brewery employees fall under a collective bargaining agreement that provides for termination of employees only for just cause. The agreement also provides that employees can file a grievance through which their union,

1

Teamsters Local Union No. 284, which can challenge any disciplinary action taken against the employee.  Such grievances are entertained first by a department head, then by a human resources manager, and finally by the Multi-Plant Grievance Committee, which is composed of two company representatives, two union representatives, and a mutually agreed-upon arbitrator.  A grievance decision by the Multi-Plant Grievance Committee is binding and there is no additional appeal.

One employee who filed such a grievance was William Robinson.  In July 1993, a brewery employee named Diane Chiandet complained to management that she had received anonymous handwritten notes.  Defendant hired a handwriting expert who compared the notes to handwriting samples taken from brewery employees and concluded that Robinson had authored the notes.  Robinson initially denied writing the notes, but later confessed.  Defendant consequently terminated Robinson's employment.  Robinson pursued a union-backed grievance, however, and a successful appeal to the Multi-Plant Grievance Committee resulted in Robinson's reinstatement.

Robinson was therefore still working for Defendant when Plaintiff Hill began working on the same assembly line in 2000.  On November 28, 2000, Hill contacted her union steward and stated that Robinson had begun touching her arms and shoulders, brushing up against her from behind, and making notably lewd remarks to her.  The union steward informed Hill that she should report the conduct to her supervisor, Don Schlarman.  Later that day, Hill asked Schlarman to move her to a different line, but she did not mention her allegations of harassment at that time.  After the union steward again told Hill to report her allegations, Hill informed Schlarman.  Robinson and Hill were then assigned to different work areas, and Schlarman

contacted Defendant's human resources department. Human resources contacted Hill, who informed the investigator that Robinson had also allegedly harassed Plaintiff Cunningham.

Assistant Human Resources Manager Cortlin Davidson and Robinson's manager subsequently met with Robinson and his union steward on November 30, 2000. Robinson denied Hill's allegations of harassment. Davidson then spoke with Cunningham on December 4, 2000. Cunningham stated that Robinson's conduct had indeed made her uncomfortable in the past, but that the conduct had ended after she had requested and obtained a transfer to a different line than Robinson. Cunningham also stated that when seeking transfer, she had not told her supervisors of the reason behind her request. Instead, she had simply told supervisors that Robinson was "really trying to make [her] job difficult."[1] (Cunningham Dep. at 118.) She expressed a desire not to be involved in any investigation and, in a subsequent meeting with various company actors, in fact expressly denied that Robinson or any other employee had harassed her and then walked out of the meeting.[2] Over the course of the next several days, Davidson interviewed ten other employees who worked on the same line as Hill and Robinson.

---

[1] In her memorandum in opposition, Cunningham highlights her deposition testimony in which she stated that she *knows* that she let her supervisors know what Robinson was doing to support her claim of reporting. But Cunningham's deposition also contains testimony in which she repeatedly states that she could not remember what she had told various supervisors and that she had mentioned to them a few times that Robinson was making her life "difficult." (Cunningham Dep. at 120, 121.) Cunningham additionally testified that she could not recall the name of one of the supervisors to whom she spoke and that she could not recall specifically what she had told him. (Cunningham Dep. at 151.) There is a substantial difference between unspecific, conclusory allegations and reporting actual specific harassment. The Court therefore cannot regard Cunningham's self-serving, broad statement of reporting, continually refuted by her own testimony, as sufficient to create a genuine issue of material fact.

[2] Cunningham later resigned her employment with Defendant and declined to participate in a meeting to discuss her resignation. (Cunningham Dep. at 200-03.)

None confirmed any harassment of Hill by Robinson.

On December 9, 2000, someone allegedly set fire to Hill's vehicle while it was parked outside her home. Hill told the fire investigator that she suspected Robinson, but this was based on her "gut feeling" and she had no evidence linking Defendant to the arson.[3] No arrest was ever made.

In a January 26, 2001 letter, Davidson informed Hill that "the charges of harassment cannot be substantiated." (Doc. # 42, Ex. A-2, at 31.) The letter expressly stated that the company's policies opposed any form of retaliation. Davidson also met with Robinson to discuss the company's policy on harassment and to make clear that any violation would result in discipline that could include termination of employment. Defendant kept Hill and Robinson assigned to different shifts, and Hill had no further problems with Robinson. Defendant eventually terminated Hill's employment, however, after she falsified a doctor's certification to obtain leave under the Family and Medical Leave Act. Hill admits that she falsified the document and testified at her deposition that she does not contest the reasons for her termination.

Issues with Robinson again arose several years later. In 2002, Plaintiff Hawkins was working the midnight shift on assembly line 75. Robinson also worked on this line, and the two co-workers were friends. This friendship allegedly took an unusual turn on May 16, 2003, however. Robinson and Hawkins were working on the line on that date when Robinson purportedly poked Hawkins' right breast. Hawkins reported the incident to her supervisor, Jim

---

[3] In her deposition, Hill stated that she does not believe that Defendant directed Robinson to set fire to her vehicle. (Robinson Dep. at 137.) Recognizing that there may be potential hearsay issues, the Court nonetheless notes that several affiants assert in affidavits that Robinson made incriminating statements in regard to the fire; these statements, however, do not establish Defendant's liability. (Doc. # 47-3 ¶ 3; Doc. # 47-4 ¶ 4.)

Gress, on May 20, 2003 and requested that either she or Robinson be moved to a different line. Hawkins asked that Gress keep the conversation confidential and stated that she did not want any other action taken against Robinson. Gress in turn informed Hawkins that she would have to make a formal complaint against Robinson.

Assistant Human Resources Manager Shirley Boyd met with Hawkins and Gress on May 23, 2003. Hawkins informed them that she did not want to make a formal complaint and that she would not provide additional information about the incident other than that Plaintiff Jackson was a witness. Two days later, Boyd spoke with Jackson. Jackson confirmed that Robinson had been poking at Hawkins but stated that Hawkins and Robinson were joking around and that she did not believe that the touching was serious.[4]

Boyd spoke with Hawkins again on May 27, 2003. After Hawkins provided more details of the incident with Robinson, Boyd then met with Robinson and informed him of the investigation. The investigation led to another brewery employee, LaFawn Hudson, whom Hawkins had indicated Robinson had also harassed. When Boyd spoke with Hudson, Hudson declined to make a formal complaint against Robinson and stated that she did not want to participate in any investigation. Hudson eventually told Boyd that Robinson had called her a name and threatened to strike her in the face in October 2002.

The next day–May 28, 2003–Boyd and various management officials met with Robinson. Robinson denied poking Hawkins' breast and denied threatening Hudson. He also stated that he

---

[4] In her deposition, Jackson disagreed with a written report summarizing her statement as indicating that she saw the touching. Jackson testified that she saw poking (but not actual contact) and that she heard Hawkins say that Robinson had grabbed her breast. (Jackson Dep. at 106-07.)

and Hawkins had been playing around and that they had smoked a cigarette together after the alleged incident took place.  Boyd informed Robinson that he was on suspension and could not return to Defendant's premises.  An off-duty police officer then escorted Robinson from the building and to his car.  On June 2, 2003, Defendant terminated Robinson's employment.

The union again filed a grievance on Robinson's behalf.  The grievance proceeded through the appropriate channels until it also reached the Multi-Plant Grievance Committee.  This time, the Multi-Plant Grievance Committee upheld Robinson's termination.

Robinson's story does not end with his termination from employment.  During the investigation process and until his suspension, Defendant had moved Robinson to a different work area than Hawkins.  After the Columbus Police Department had refused Defendant's request to conduct surveillance of Robinson, the company hired a private investigation company to conduct 24-hour surveillance and to contact the police if Robinson was headed toward any employee's home.  Defendant also offered Hawkins and Jackson a parking spot in front of the guard building, Hawkins a security escort to and from her vehicle and hotel accommodations, and both women periodic surveillance of their home.  Jackson declined the home surveillance because she did not want security sitting in her driveway.

The surveillance of Robinson ended sometime before July 29, 2003.  On that day, someone poured gasoline in the basement of Jackson's house and set it on fire while she was at work; Jackson believes it was Robinson.  Defendant offered a $25,000 reward for any information relating to the fire, but no arrest was ever made.  Months later, on October 23, 2003, Robinson shot his girlfriend and several hours later committed suicide.

Plaintiffs subsequently initiated this lawsuit in the Franklin County Court of Common

Pleas on June 13, 2005, asserting discrimination based on gender and retaliation for opposing sexually harassing acts and practices in violation of Ohio Rev. Code § 4112.02 and 4112.99.[5] (Doc. # 1, Ex. A.) Defendant removed the action to this federal forum on July 15, 2005. (Doc. # 1.) Defendant thereafter filed the pending motions for summary judgment (Docs. # 40, 41, 42, 43). The parties have completed their summary judgment briefing, and the motions are now ripe for disposition.

## II. Discussion

### A. Standard Involved

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must therefore grant a motion for summary judgment here if a plaintiff, who has the burden of proof at trial, fails to make a showing sufficient to establish the existence of an element that is essential to her case. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the non-moving party, and that party must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A

---

[5] Contrary to the language of the pleading, Plaintiff Hawkins testified at her deposition that she is not asserting a retaliation claim against Defendant. (Hawkins Dep. at 198.)

genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52.)

### B. Analysis

The substance of the relatively unspecific Complaint presents causes of action under Ohio Rev. Code §§ 4112.02 and 4112.99 for sex discrimination/hostile work environment[6] and retaliation.[7] In order to demonstrate a *prima facie* case of § 4112 hostile work environment sexual harassment, Plaintiffs Hill, Cunningham, and Hawkins[8] must each prove that

> (1) the harassment was unwelcome; (2) the harassment was based on sex; (3) the harassing conduct was sufficiently severe or pervasive to affect the terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment; and (4) the harassment was committed by a supervisor or the employer, through its agents or supervisory personnel, who knew or should have known of the harassment and failed to take immediate and appropriate corrective action.

*Knox v. Neaton Auto Products Mfg., Inc.*, 375 F.3d 451, 459 (6th Cir. 2004). *See also Williams*, 187 F.3d at 560-61. But viewing all the evidence in a light most favorable to Plaintiffs, the

---

[6] Discrimination based on sex can create a hostile or abusive work environment. *Williams v. General Motors Corp.*, 187 F.3d 553, 560 (6th Cir. 1999).

[7] As the parties recognize, Ohio courts utilize Title VII case law when construing Ohio's § 4112. *Lundy v. General Motors Corp.*, 101 Fed. Appx. 68, 71, 2004 WL 1262134, at *2 (6th Cir. June 4, 2004) (citing *Retterer v. Whirlpool Corp.,* 111 Ohio App. 3d 847, 677 N.E.2d 417, 424 (Ohio Ct. App. 1996)).

[8] The Complaint identifies these three individuals as asserting the hostile work environment claims. (Doc. # 1, Ex. A ¶ 2.)

Court concludes that no reasonable factfinder could find against Defendant on the hostile work environment claims.

To prove discrimination in the form of a hostile work environment, a plaintiff must show that

> the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment .... Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment–an environment that a reasonable person would find hostile or abusive–is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

*Virgilio v. Potter*, 59 Fed. Appx. 678, 681, 2003 WL 682746, at *3 (6th Cir. Feb. 24, 2003) (quoting *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21-23 (1993)) (internal quotes and citations omitted). In light of this standard, Defendant correctly notes that Hawkins' isolated incident of being poked once does not rise to the level of objectively severe and pervasive harassment that affected the terms, conditions, or privileges of her employment.

Additionally, a plaintiff such as Cunningham cannot bootstrap a hostile work environment by relying on events of which she was unaware during the relevant time period. *See Wanchik v. Great Lakes Health Plan, Inc.*, 6 Fed. Appx. 252, 262, 2001 WL 223742, at *8 (6th Cir. Mar. 2, 2001) (explaining that the general rule that "episodes of harassment concerning other women are probative to plaintiff's experience in a hostile work environment, even if not directed at plaintiff herself"is qualified by the fact that "[o]f course, plaintiff must have been aware of these incidents during her employment, even if indirectly, for the accounts of others to be relevant"). By the time Hill's purported harassment took place, Cunningham was no longer

exposed to or harassed by Robinson.

Even assuming *arguendo* that Plaintiffs can satisfy the first three elements of their hostile work environment claims,[9] Plaintiffs' claims must fail because no reasonable juror could conclude on the evidence before this Court that Defendant knew or should have known of the alleged harassment and failed to implement prompt and appropriate corrective action.

Plaintiff spend much of their 73-page memorandum in opposition detailing the alleged conduct by Robinson constituting harassment. Defendant does not dispute that Robinson's conduct was harassing; that is in fact why Defendant terminated Robinson's employment. The Sixth Circuit has stated that "[t]he act of discrimination by the employer in [a hostile work environment case] is not the harassment, but rather the inappropriate response to the charges of harassment." *McCombs v. Meijer, Inc.*, 395 F.3d 346, 353 (6th Cir. 2005). Accordingly, the only relevant inquiry here is whether Defendant's conduct, after having been put on notice of Robinson's actions, constituted appropriate remedial action.[10] This is because, as the Sixth Circuit has explained in discussing a hostile work environment claim, "when the allegations of sexual harassment involve a coworker and the employer has fashioned a response, the employer will only be liable 'if its response manifests indifference or unreasonableness in light of the facts the employer knew or should have known.' " *McCombs v. Meijer, Inc.*, 395 F.3d 346, 353 (6th Cir. 2005). *See also Mast v. IMCO Recycling of Ohio, Inc.*, 58 Fed. Appx. 116, 119, 2003 WL

---

[9] Because the remaining claims fail on the fourth element of a *prima facie* case, the Court need not and does not engage in unnecessary analysis in regard to the third element.

[10] Because Ohio Rev. Code § 4112 permits a plaintiff to sue his or her supervisor individually for harassment, the specifics of Robinson's conduct would of course be relevant to the threshold inquiry of whether harassment occurred. But Plaintiffs have not named their supervisors in this action, and Defendant does not dispute the underlying harassment.

247109, at *2 (6th Cir. Feb. 3, 2003) ("If the harasser was merely the plaintiff's co-worker, the employer will be liable only where the plaintiff can demonstrate that the employer knew or should have known of the harassment and failed to take appropriate remedial action.") (citing *EEOC v. Harbert-Yeargin, Inc.,* 266 F.3d 498, 518 (6th Cir.2001); *Courtney v. Landair Transp., Inc.,* 227 F.3d 559, 564-65 (6th Cir.2000)).

In this case, Defendant had in place a well-publicized anti-harassment policy and acted in accordance with that policy when it received reports of harassment. The evidence indicates that each plaintiff received copies at various points during their employment of Defendant's harassment policy, which included the individuals to whom an employee should report harassment. Defendant also posted the policy on the brewery bulletin board and on its intranet website, and Defendant conducted employee training sessions on the harassment policy that Plaintiffs attended. Additionally, Plaintiffs all were aware of the policy and its reporting procedures.

The Court recognizes again that not all plaintiffs reported the alleged harassment. Cunningham, for example, repeatedly did not report to Defendant that Robinson harassed her and in fact formerly expressly denied harassment by Robinson or any other employee. By the time Defendant became aware of possible harassment, Robinson had long since ceased interacting with and working alongside Cunningham. This stands in stark contrast to cases such as *McCombs* where an employer was found to have acted indifferently or unreasonably when it transferred an employee to work alongside her harasser *after* she complained to her supervisor. *McCombs*, 395 F.3d at 355. The circumstances here mandate concluding as a matter of law that Cunningham has failed to satisfy a *prima facie* case because a company cannot be liable for not

acting to remedy harassment that it did not know or have reason to know existed.  *See E.E.O.C. v. Harbert-Yeargrin, Inc.*, 266 F.3d 498, 518 (6th Cir. 2001) (employer is entitled to judgment as a matter of law when it neither knew nor should have known of improper conduct at time of harassment).

Notably, Defendant also repeatedly took appropriate remedial action.  Promptly after learning of the various allegations against Robinson, Defendant investigated the allegations.  In the case of Hill, the investigation yielded no corroboration for her allegations.  Defendant nonetheless separated Hill and Robinson and counseled Robinson on the company policy.  Hill's alleged harassment ended.  This constitutes an appropriate response.  *See Mast v. IMCO Recycling of Ohio, Inc.*, 58 Fed. Appx. 116, 121, 2003 WL 247109, at *5 (6th Cir. Feb 3, 2003) (holding that an employer's prompt investigation and warning an alleged harasser that he could lose his job for future misconduct was an appropriate response in light of uncorroborated alleged misconduct).

In the case of Hawkins, Defendant moved and then suspended Robinson in the investigation, and upon finding support for the allegations, Defendant terminated Robinson for his misconduct.  During the course of the investigation, Defendant also took numerous actions to protect Plaintiffs.[11]  Rather than representing actionable misconduct, Defendant's actions in fact present commendable and responsible conduct that in various respects exceed what the law requires.

In the case of Cunningham, the evidence indicates that Defendant took appropriate

---

[11] The parties disagree over the extent of the protection offered, but even considering only the uncontested offered (and in Jackson's case, accepted) protection, the Court must recognize that Defendant offered and provided when permitted notable protection.

remedial actions based on what she did report. After Cunningham reported that Robinson was making her life difficult, Defendant transferred her and her difficulties with Robinson ceased. Defendant's action, even if predicated on less than full information, therefore remedied the issues Cunningham had with Robinson. To the extent that Cunningham indeed argues now that Defendant's actions were insufficient, she overlooks that she was the cause of Defendant's lack of information. Defendant pursued her potential harassment allegations but was stopped by Cunningham's own conduct and admitted lack of cooperation. Her more recent, self-serving claims that she failed to cooperate because she felt intimidated lack any support or apparent foundation and cannot create an issue of fact, much less employer liability, by excusing her failure to report. As Defendant correctly explains in its reply memorandum, Cunningham's deposition testimony presents subjective conclusions (and in the case of a supervisor's "thumbs-up," wholesale speculation) that fail to rise to the level of evidence creating even a favorable, credible inference. *See Arnold v. Tuskegee Univ.*, No. 06-11156, 2006 WL 3724152, at *5 (11th Cir. Dec. 19, 2006) (stating in failure-to-report case that "subjective fears of reprisal, standing alone, do not excuse an employee's failure to report . . . harassment in accordance with the employer's policy"). *See also Walton v. Johnson & Johnson Servs., Inc.*, 347 F.3d 1272, 1290-91 (11th Cir. 2003) (collecting cases supporting the proposition that "absent a credible threat of retaliation, [an employee's] subjective fears of reprisal do not excuse her failure to report . . . alleged harassment").

   As a matter of law, Defendant's actions thus constituted appropriate remedial actions and hardly present employer indifference or unreasonableness. This Court therefore **GRANTS** Defendant's motions for summary judgment on Plaintiffs' claims of sex discrimination/hostile

work environment.

As noted, Plaintiffs Hill and Jackson[12] also assert that Defendant is liable for retaliation under Ohio Rev. Code §§ 4112.02 and 4112.99. To establish a *prima facie* case of retaliation, each plaintiff must demonstrate that

> (1) she engaged in a protected activity; (2) the exercise of the protected right was known to defendant; (3) the defendant thereafter took adverse employment action against plaintiff or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) a causal link existed between the protected activity and the adverse action.

*Mast*, 58 Fed. Appx. at 122, 2003 WL 247109, at *5 (citing *Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 792 (6th Cir. 2000)). An employer thus violates the statutory scheme when it engages in an adverse employment action against a person who has complained of harassment or discrimination or who has taken part in an investigation into allegations of harassment or discrimination.

Defendant concedes for briefing purposes that Jackson engaged in a protected activity when she acted as a witness in Defendant's investigation of Hawkins' allegations against Robinson. Similarly, Hill also engaged in protected activity known to Defendant. But the allegations made in support of Plaintiffs' claims fail to rise to the level of adverse employment actions. For example, Plaintiffs assert that hourly co-workers have been rude to them since they

---

[12] The Complaint identifies these two individuals as asserting retaliation claims. (Doc. # 1, Ex. A ¶¶ 3, 4.) As noted, Hawkins clarified in her deposition that she is not asserting a retaliation claim. (Hawkins Dep. at 198.) This leaves Cunningham. Defendant briefed why a retaliation claim by Cunningham could not succeed, but Plaintiffs' joint memorandum in opposition defends only the retaliation claims of Hill and Jackson. (Doc. # 47.) In its reply memorandum, Defendant repeats its demand for summary judgment on a retaliation claim by Cunningham "to the extent she brought one." (Doc. # 56, at 1 n.2.) The Court does not read the Complaint to contain such a claim, and Cunningham's own briefing supports that she has not asserted a retaliation claim.

reported Robinson's harassment, but mere rudeness does not rise to the level of an adverse employment action. Additionally, Plaintiffs fail to point to any way in which Defendant condoned or encouraged any retaliatory behavior. And, contrary to Plaintiffs' reading of case law, the Sixth Circuit has foreclosed co-worker retaliation claims (as opposed to a supervisor retaliation claim) by stating that "we have not recognized co-worker retaliatory harassment as a valid cause of action."[13] *Little v. BP Exploration & Oil Co.*, 129 Fed. Appx. 260, 262, 2005 WL 977071, at *2 (6th Cir. Apr. 28, 2005) (citing *Swanson v. Livingston County,* 121 Fed. Appx. 80, 85, 2005 WL 95737, at *4 (6th Cir. 2005)).

Hill also asserts that Defendant retaliated against her and that the retaliation included the burning of her vehicle. Jackson in turn argues that she suffered retaliation that included her house being destroyed by fire. Neither allegation is supported by the evidence, and both Plaintiffs conceded in their depositions that Defendant was not behind the fires. Moreover, neither allegation presents an adverse *employment* action undertaken by Defendant. There is a complete absence of evidence that any employee or agent of Defendant engaged in the foregoing acts, only Plaintiffs' conclusory and subjective suspicions. And, in regard to an adverse employment action, the undisputed evidence indicates that Plaintiffs were not suspended, they were not demoted, and their pay was never reduced. Jackson continues to work for Defendant, and Hill was terminated from employment for a wholly unrelated reason that she admits was valid.[14] The substantial case law to which Defendant directs this Court precludes the existence

---

[13] Plaintiff apparently interpret this statement as meaning that "[t]he Sixth Circuit Court of Appeals had not held that there is not employer liability for retaliation caused by co-workers." (Doc. # 47, at 47.) But failing to recognize a cause of action forecloses liability.

[14] Hawkins also continues to work for Defendant, and Cunningham voluntarily resigned.

of *prima facie* claims here.

As a matter of law, Plaintiffs' claims of retaliation fail. Plaintiffs have simply failed to introduce evidence that Defendant engaged in any retaliation. The Court therefore also **GRANTS** summary judgment to Defendant on this remaining aspect of Plaintiffs' Complaint.

### III.  Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant's motions for summary judgment.  (Docs. # 40, 41, 42, 43.)  The Clerk shall enter judgment accordingly and terminate this case upon the docket records of the United States District Court for the Southern District of Ohio, Eastern Division, at Columbus.

**IT IS SO ORDERED.**

    /s/   Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE